IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2016

**LEDARIUS D. MAXWELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Madison County**
**No. C-15-8     Donald H. Allen, Judge**

_____

**No. W2015-01012-CCA-R3-PC  -  Filed February 9, 2016**

_____

The petitioner, LeDarius D. Maxwell, appeals the denial of post-conviction relief from his 2012 Madison County Criminal Court jury convictions of aggravated assault and attempted second degree murder, for which he received a sentence of 24 years. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, LeDarius D. Maxwell.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Madison County Criminal Court jury convicted the petitioner of two counts of aggravated assault and two counts of attempted second degree murder, and the trial court imposed an effective sentence of 24 years. This court affirmed the judgments on direct appeal. *See State v. Ledarius Devonte Maxwell*, No. W2012-00729-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Sept. 13, 2013), *perm. app. denied* (Tenn. Jan. 17, 2014).

In *Ledarius Devonte Maxwell*, this court stated the facts of the case. The evidence showed that the petitioner and Lavelle Kinnie, who was deceased by the time of trial, had "problems in the past" of an unknown origin. *Ledarius Devonte Maxwell*, slip

op. at 2. On March 3, 2011, Lavelle Kinnie and his brother, Cedric, drove past a convenience store and saw the petitioner standing outside. *Id.* According to Cedric Kinnie, the petitioner "made several gestures at the car . . . 'just throwing his hands and talking or yelling or whatever.'" *Id.* One hour later, the Kinnie brothers arrived at Cedric Kinnie's residence, which was approximately one quarter of a mile from the convenience store, and the petitioner began crossing the street toward the two men. *Id.* When the petitioner was 10 to 15 feet away, the petitioner produced a handgun and fired "approximately five shots" at the Kinnie brothers. *Id.* The brothers managed to get back into their vehicle and flee without sustaining any injuries. *Id.* The investigating police officer "noted that the driver-side turn signal appeared to have been shot out," but he found no weapon, bullets, or shell casings at the scene. *Id.* Cedric Kinnie testified that neither he nor his brother had a handgun on March 3. *Id.*

Cedric Kinnie later identified the petitioner from a photographic lineup as the man who had fired a handgun at him and his brother. *Id.* at 3. After the petitioner was provided with *Miranda* warnings, he told the interviewing officer the following:

> "I did shoot back . . . I shot twice and my gun jammed, I left
> and ran into them again[. B]efore I saw them[,] I unjammed
> my gun. I shot till [sic] the gun was empty. I had about 5 or
> 6 bullets."

*Id.*

On January 8, 2015, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. On May 18, 2015, the post-conviction court conducted an evidentiary hearing.

At the evidentiary hearing, trial counsel testified that he had been appointed to represent the petitioner and that he had met with the petitioner for the first time on October 17, 2011, at the jail. Trial counsel conceded that he never obtained a transcript of the petitioner's preliminary hearing, although he recalled discussing the petitioner's interest in the transcript and agreed that it would have been prudent to have provided a copy to the petitioner. Trial counsel testified that he met with the petitioner five times between the date of his appointment and the petitioner's January 26, 2012 trial.

Although he could not recall with any specificity, trial counsel was "sure" he had discussed the possibility of consecutive sentencing with the petitioner due to the seriousness of the charged offenses. Trial counsel admitted that he was unaware of the extent of the petitioner's prior juvenile adjudications when he was discussing potential plea offers with the petitioner.

With respect to plea negotiations, trial counsel testified that the State "had solicited an offer of ten years." Trial counsel explained that it was not a firm offer but that if the petitioner had shown interest in the offer, the State would have spoken with the Kinnie family to determine their level of satisfaction with the offer. Trial counsel conveyed the offer to the petitioner, who was "not interested," and the case proceeded to trial two days later. Trial counsel stated that, at that point, he did not discuss consecutive sentencing with the petitioner and chose instead to focus "solely on trial strategy and preparation."

The petitioner testified that he had requested a copy of the preliminary hearing transcript on several occasions but that he never received it. When trial counsel conveyed the offer of 10 years to the petitioner, the petitioner asked for trial counsel's opinion. According to the petitioner, trial counsel responded "that he think [sic] I can beat the case," causing the petitioner to reject the offer and proceed to trial. The petitioner testified that if trial counsel had informed him that he had no chance of success at trial, he would have accepted the offer of 10 years.

The petitioner stated that trial counsel never discussed potential sentencing with him or informed him that he could be subject to consecutive sentencing. The petitioner testified that, in his opinion, trial counsel should have made more of an effort to convince him to accept the 10-year offer.

On cross-examination, the petitioner admitted that, although he had been charged with two counts of attempted first degree murder, he had been convicted of the lesser-included offenses of attempted second degree murder.

In the post-conviction court's order denying post-conviction relief, the court found that the petitioner failed to prove ineffective assistance of counsel by clear and convincing evidence and failed to prove that trial counsel's performance was either deficient or prejudicial. The post-conviction court incorporated by reference a letter in which the court set forth its findings and in which the court stated as follows:

> The [c]ourt credits the testimony of [trial counsel] when he stated that he advised the [petitioner] of the State's plea offer of 10 years to serve, which the [petitioner] rejected.
>
> . . . .
>
> Finally, the [c]ourt does not credit [the petitioner's] testimony that [trial counsel] failed to inform him of the

State's plea offer of 10 years to serve. An attorney's job is not to "convince" his client to accept an offer which the [petitioner] knowingly and understandingly rejects. This issue is without merit.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, curiously claiming contradictory positions: that trial counsel performed deficiently by failing to convince the petitioner to accept the plea offer and by failing to inform the petitioner that an offer had been extended. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and

used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted).  We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings.  *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness.  *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court.  The explicitly accredited testimony of the petitioner's trial counsel, as well as the explicitly discredited testimony of the petitioner, evince the petitioner's knowledge of and rejection of the plea offer and his willingness to proceed to trial.  Moreover, the record amply demonstrates that trial counsel rendered effective assistance in representing the petitioner.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE